KEN NAGY (I.S.B. No. 6176)
ATTORNEY AT LAW
P.O. Box 164
Lewiston, Idaho 83501
Telephone: (208) 301-0126
Facsimile: (888) 291-3832
E-mail: knagy@lewiston.com

ATTORNEY FOR PLAINTIFF

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| INTERMOUNTAIN FAIR HOUSING COUNCIL, | ) ) ) | CASE NO. CV <u>10-598</u> |
| Plaintiff, | ) ) | VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL |
| vs. | ) ) | |
| CHIEF SELTICE MOBILE HOME PARK and JEANIE PEERY, | ) ) ) | |
| Defendants. | ) ) | |

COMES NOW the Plaintiff Intermountain Fair Housing Council and for a cause of action

against the Defendants Chief Seltice Mobile Home Park and Jeanie Peery, states and alleges as

follows:

<u>NATURE OF THE ACTION</u>

1.  This is an action brought by the above-named Plaintiff for declaratory judgment,

permanent injunctive relief and damages on the following bases:

     a.  Fair Housing Act, 42 U.S.C. §3601 et seq. (hereinafter "FHA"), and in particular:

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

1

i.  Discrimination in the sale or rental, or otherwise made unavailable, a dwelling because of "handicap", 42 U.S.C. §3604(f)(1);

ii. Discriminatory terms, conditions or privileges in the sale or rental of a dwelling because of "handicap", 42 U.S.C. §3604(f)(2);

iii. Refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling, 42 U.S.C. §3604(f)(3)(B);

iv.  Making, printing or publishing a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap", 42 U.S.C. §3604(c); and

v. Interference, coercion or intimidation, 42 U.S.C. §3617.

b.  Fair Housing Regulations, 24 C.F.R. §100 et seq., and in particular 24 C.F.R. §100.202(c) which prohibits inquiry into the nature or severity of an applicant's disability.

c.  Negligence.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction over this action pursuant to 42 U.S.C. §3613 and 28 U.S.C. §§1331, 1332, 1337, 1343 and 2201.  The amount in controversy exceeds $75,000 exclusive of interests and costs.  Venue is proper in this District in that the claims alleged herein arose in and concern real property located in the City of Post Falls, County of Kootenai, State of Idaho.

## PARTIES

3.   The Plaintiff Intermountain Fair Housing Council (hereinafter "the Plaintiff" or "IFHC") is a private, nonprofit organization organized under the laws of the State of Idaho with

its principal place of business at 350 North 9th Street, Suite M-100, Boise, Idaho 83702.  Its

mission is to advance equal access to housing for all persons without regard to race, color, sex,

religion, national origin, familial status, or disability (the term "handicap", as that term is used

and defined in the FHA, is used herein interchangeably with the term "disability").  The Plaintiff

serves housing consumers through, among other things, education on the fair housing laws and

assistance with complaints.

4.  The Defendant Chief Seltice Mobile Home Park is an unincorporated business doing

business in the State of Idaho.  Its principal place of business is North 651 Corbin Road, Post

Falls, Idaho 83854.  The Defendant Jeanie Peery (hereinafter "Defendant Peery") is the owner

and operator of the Defendant Chief Seltice Mobile Home Park and resides at 17332 North

Wilkinson Road, Rathdrum, Idaho 83858.  The real property that is the subject of this proceeding

is the Chief Seltice Mobile Home Park (hereinafter "the Subject Property"), a 28-space mobile

home park located at 735 North Corbin Road, Post Falls, Idaho 83854.  The Subject Property is

owned by the Defendant Peery and operated by the above-named Defendants.

STANDING OF PLAINTIFF

5.  The Plaintiff has suffered damages as the result of the above-named Defendants'

actions and omissions, including the diversion of the Plaintiff's past and future resources, lost

economic opportunity, and the frustration of the Plaintiff's mission.

6.  The Plaintiff's mission, as described above, has been frustrated by the above-named

Defendants' practices because the above-named Defendants' violations of the FHA communicate

to housing consumers and housing providers that discriminatory practices are permissible and

that correctional remedies are not available, thereby hampering Plaintiff's efforts to educate the

public on fair housing issues and to advance equal access to housing.

VERIFIED COMPLAINT AND                    3
DEMAND FOR JURY TRIAL

7.  The Plaintiff's mission has further been frustrated as the above-named Defendants' violations of the FHA have reduced the pool of non-discriminatory rental housing available to tenants in the State of Idaho.

8.  In order to counteract the frustration of the Plaintiff's mission, the Plaintiff has had to devote significant resources to identify, investigate, document and take action to correct the above-named Defendants' violations of the FHA, including but not limited to the incursion of litigation expenses.  As a result, the Plaintiff has actually diverted resources from other fair housing-related activities, including fair housing education and enforcement activities throughout the State of Idaho and the surrounding region.  Furthermore, the Plaintiff will necessarily incur additional expenses in the future to counteract the lingering effects of the Defendants' violations of the FHA through the monitoring of the above-named Defendants' activities, publication and advertising costs, and the sponsorship of educational activities.

9.  As a direct result of the above-named Defendants' actions and omissions as described below, the Plaintiff is an "aggrieved person", as that term is defined by the FHA.  42 U.S.C. §3601(i).

10.  The Plaintiff has suffered and continues to suffer significant and irreparable loss and injury, and has sufficient standing to bring this action before this Court.

GENERAL ALLEGATIONS

11.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-10 above.

12.  M.T. is handicapped, as that term is defined at 42 U.S.C. §3602(h).  As a result of M.T.'s handicap, she requires the assistance of a service animal.  M.T.'s service animal is a dog.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

4

13.  M.T. entered into a lease with the above-named Defendants on or about the 5th day of September, 1995 for the lease of a mobile home lot located at the Subject Property.  M.T. purchased a mobile home located on a lot that she leases from the above-named Defendants.

14.  In or about April 2007, M.T. obtained a service animal, which is a dog named "Miss Pebbles".  At the time she obtained the service animal, she requested  of the above-named Defendants a reasonable accommodation that she be permitted to have a service animal and submitted to the above-named Defendants a prescription from her treating physician for the service animal dated the 16th day of April, 2007 (redacted copy attached hereto as "Exhibit A"). The above-named Defendants failed or refused to respond to that reasonable accommodation request from M.T.

15.  In or about early April 2009, the Defendant Peery instructed Dick Hensyel, the property manager for the Defendant Chief Seltice Mobile Home Park, to require all tenants who have dogs to either remove their dogs from the Subject Property or have their leases terminated. Mr. Hensyel told the Defendant Peery that she cannot force M.T. to remove her dog because it is a service animal for which she has properly requested a reasonable accommodation and has submitted a prescription from her treating physician.  The Defendant Peery told Mr. Hensyel that she will not permit M.T. to remain living at the mobile home park with her service animal, therefore she will terminate M.T.'s lease without stating a reason for the termination.

16.  M.T. received a letter from Shawn Nunley, attorney for the above-named Defendants, dated the 9th day of April, 2009 (redacted copy attached hereto as "Exhibit B") which stated that her lease is being terminated and which gave her 90 days to vacate the premises.  On or about the 10th day of April, 2010, M.T. discussed Mr. Nunley's letter with Mr.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

Hensyel, who told M.T. that her lease has been terminated due to the presence of her service animal.

17.  M.T. submitted a complaint of housing discrimination to the Plaintiff on or about the 10th day of April, 2009 as the result of the above-named Defendants' discriminatory actions.

18.  M.T. submitted to the above-named Defendants a written reasonable accommodation request dated the 15th day of April, 2009 which included a second note from her treating physician dated the 15th day of April, 2009 prescribing for her a service animal (redacted copy attached hereto as "Exhibit C").

19.  M.T. received a second letter from Shawn Nunley, attorney for the above-named Defendants, dated the 24th day of April, 2009 (redacted copy attached hereto as "Exhibit D") which acknowledged receipt of M.T.'s reasonable accommodation request and failed to grant that request.  Said letter further threatened M.T. with eviction in the event that she does not vacate the premises within 90 days of Mr. Nunley's previous letter terminating M.T.'s lease. Exh. D.

20.  M.T. authorized the Plaintiff to submit on her behalf a third reasonable accommodation request to the above-named Defendants dated the 4th day of May, 2009 (redacted copy attached hereto as "Exhibit E").

21.  M.T. received a third letter from Mr. Nunley, attorney for the above-named Defendants, dated the 28th day of May, 2009 (redacted copy attached hereto as "Exhibit F") which failed or refused to grant M.T.'s reasonable accommodation request.  Mr. Nunley's letter further described his previous letter which terminated M.T.'s lease as an "eviction notice".  Exh. F.  Such a description of that previous letter is in discord with Idaho law, which requires judicial action in order to accomplish an eviction.  Idaho Code §6-301 *et seq.*  There was no legal basis

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

6

for Mr. Nunley to assert that his previous letter was an "eviction notice" and such action was intended to coerce, intimidate, threaten or interfere with M.T. in the exercise or enjoyment of her rights granted or protected by the FHA.  42 U.S.C. §3617.

22.  The Plaintiff investigated M.T.'s complaint of housing discrimination and conducted a recorded telephonic test of the above-named Defendants on or about the 29th day of May, 2009 to determine whether there is further evidence to support M.T.'s allegations.  The Plaintiff's tester contacted Mr. Hensyel, the above-named Defendants' property manager, regarding the availability of space in the mobile home park.  The Plaintiff's tester was told by Mr. Hensyel that there are spaces available for $255.00 per month and $100.00 deposit.  Mr. Hensyel inquired of the Plaintiff's tester whether she has "a big dog."  The Plaintiff's tester told Mr. Hensyel "no."  Mr. Hensyel told the Plaintiff's tester "that's good, because Jeanie doesn't, uh, uh, she's kicking people out right now because they have dogs."

23.  On or about the 23rd day of June, 2009, two testers for the Plaintiff conducted an in-person test of the above-named Defendants.  The Plaintiff's testers contacted Mr. Hensyel regarding the availability of space in the mobile home park.  Mr. Hensyel told the Plaintiff's testers that the Defendant Peery will not permit them to live at the mobile home park with an animal, even if the animal is a service animal.

24.  M.T. filed a complaint of housing discrimination with the United States Department of Housing and Urban Development (hereinafter "HUD") dated the 28th day of May, 2009.

25.  As a result of the Plaintiff's investigation, it concluded that the above-named Defendants have engaged in housing discrimination and it filed an administrative complaint with HUD dated the 25th day of June, 2009.

VERIFIED COMPLAINT AND                    7
DEMAND FOR JURY TRIAL

26.  The above-named Defendants terminated Mr. Hensyel's employment as the result of his refusal to terminate M.T.'s lease due to the presence of her service animal.

27.  As the result of the above-named Defendant's discriminatory conduct and the termination of her lease, M.T. vacated her trailer at the Subject Property on or about the 29th day of June, 2009.  M.T. removed her personal belongings but was legally unable to remove her trailer because it is too old to be moved.  As the result, M.T.'s trailer remains at the Subject Property.  Even though the above-named Defendants have terminated M.T.'s lease, they continue to bill M.T. for the lot rent.

28.  The Plaintiff and M.T. withdrew the administrative complaints that they each had filed with HUD in order to seek a judicial remedy.  The Secretary of HUD has not commenced a hearing on the record pursuant to the FHA regarding the matters at issue herein.

29.  Due to the ongoing nature of the above-named Defendants' conduct, said conduct constitutes a continuing violation.

30.  The above-named Defendants' conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the victims.

<u>COUNT ONE—DISCRIMINATION ON THE BASIS OF "HANDICAP" IN VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS</u>

31.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-30 above.

32.  The above-named Defendants have discriminated in the sale or rental of, and otherwise made unavailable and denied, a dwelling on the basis of "handicap".  42 U.S.C. §3604(f)(1).

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

8

33.  The above-named Defendants have discriminated in the terms, conditions and privileges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of "handicap".  42 U.S.C. §3604(f)(2).

34.  The above-named Defendants have refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford M.T. equal opportunity to use and enjoy a dwelling.  42 U.S.C. §3604(f)(3)(B).

35.  The above-named Defendants have made, printed or published a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap".  42 U.S.C. §3604(c).

36.  The above-named Defendants have engaged in interference, coercion or intimidation in the exercise or enjoyment of rights granted the victims by the FHA.  42 U.S.C. §3617.

COUNT TWO—NEGLIGENCE

37.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-36 above.

38.  The above-named Defendants owed a duty of care to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to M.T.

39.  The above-named Defendants owed a duty of care to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff when it performed its tests of the above-named Defendants regarding the Subject Property.

40.  It could have been reasonably anticipated or foreseen by the above-named Defendants that their failure to use reasonable care might result in injury to the Plaintiff and to M.T.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

41. The above-named Defendants were negligent in that they failed to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff and to M.T. by failing to adequately train and supervise their agents and employees with regards to the requirements of the Fair Housing Act, 42 U.S.C. §3601 et seq., as well as its implementing regulations provided at 24 C.F.R. §100 et seq.

<u>DAMAGES</u>

42. The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-41 above.

43. As the result of the actions and omissions of the above-named Defendants, as described above, the Plaintiff has suffered significant and irreparable loss and injury.

44. The Plaintiff is an "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and is an intended beneficiary of the protections and requirements of the statutes, laws and regulations referenced above.

45. The Plaintiff has suffered actual damages as a result of its out-of-pocket expenses and past diversion of its resources, as described above and in the attached "Appendix A", in the amount of $13,021.11, which continue to accrue.

46. The Plaintiff has suffered actual damages as a result of the necessary future diversion of its resources, as described above and in the attached "Appendix A", in the amount of $10,500.00.

47. The Plaintiff has suffered actual damages as a result of lost economic opportunity, as described above and in the attached "Appendix A", in the amount of $1,000.00.

48. The Plaintiff has suffered actual damages as a result of the frustration of its mission, as described above and in the attached "Appendix A", in the amount of $19,006.00.

49.  In addition to the injuries suffered by the Plaintiff, the above-named Defendants have also caused significant and irreparable loss and injury to M.T. and to a number of as-of-yet unidentified persons.

50.  Said victims are "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and are intended beneficiaries of the protections and requirements of the statutes, laws and regulations referenced above.

51.  All victims of the above-named Defendants' actions and conduct should be identified and compensated through a Victims' Compensation Fund.

52.  A Victims' Compensation Fund should be established in the amount of $945,919.76 in order to compensate M.T. and as-of-yet unidentified victims of the above-named Defendants' discriminatory conduct, as described in the attached "Appendix B", from which such victims should be compensated.  Said Victims' Compensation Fund should be established and administered as follows:

      a.  The Plaintiff shall be assigned the task of managing and administering the Victims' Compensation Fund.  The Plaintiff shall be compensated for all time spent administering said Fund at the rate of $45.88 per hour.  The Plaintiff shall keep detailed records of all tasks engaged in and shall submit copies of said records to the Court and the above-named Defendants on a monthly basis.

      b.  Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the above-named Defendants shall deposit in an interest-bearing escrow account the total sum as determined by applying the calculation set forth in the attached Appendix B.

c.  Any interest accruing to such Victims' Compensation Fund shall become a part of the fund and be utilized as set forth herein.

d.  Within fifteen (15) days after the above-named Defendants deposit funds in the Victims' Compensation Fund, the Plaintiff shall publish a Notice to Potential Victims of Housing Discrimination (hereinafter "Notice") in at least five daily newspapers serving the main population centers of the State of Idaho informing readers of the availability of compensatory funds.  The form and content of the Notice shall be approved by the Court at the time of the entry of the Court's order establishing the Victims' Compensation Fund.  The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in each newspaper.  The publication dates shall be separated from one another by at least 21 days, and at least two of the publication dates shall be a Sunday.  The Plaintiff shall send a copy of the Notice prior to each and every publication date to each of the following organizations: (1) Living Independent Network Corp. (LINC), 2500 Kootenai Street, Boise, Idaho 83705; (2) Co-Ad, Inc., 4477 Emerald Street, Suite B-100, Boise, Idaho 83706; Disability Action Center, 124 East Third Street, Moscow, Idaho 83843; and (4) Living Independently for Everyone (LIFE), P.O. Box 4185, 640 Pershing Avenue, Suite 7, Pocatello, Idaho 83201.

e.  Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Plaintiff shall send by first-class mail, postage prepaid, a copy of the Notice to each tenant who currently resides or who resided at any time at the subject property.

f.  Nothing in this section shall preclude the Plaintiff from making its own additional efforts at its own expense to locate and provide notice to potentially aggrieved persons.

g.  Allegedly aggrieved persons shall have one hundred-twenty (120) days from the date of the entry of an order by this Court creating a Victims' Compensation Fund to contact the Plaintiff in response to the Notice.  The Plaintiff shall investigate the claims of allegedly aggrieved persons and, within one hundred-eighty (180) days from the entry of an order by this Court creating a Victims' Compensation Fund, shall make a preliminary determination of which persons are aggrieved and an appropriate amount of damages that should be paid to each such persons.  The Plaintiff will inform the above-named Defendants in writing of its preliminary determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim.  The above-named Defendants shall have fourteen (14) days to review the declaration and to provide to the Plaintiff any documents or information that they believe may refute the claim.

h.  After receiving the above-named Defendants' refutation, if any, the Plaintiff shall submit its final recommendations to the Court for approval, together with a copy of the declarations and any additional information submitted by the above-named Defendants.  When the Court issues an order approving or changing the Plaintiff's proposed distribution of funds for aggrieved persons, the above-named Defendants shall, within ten (10) days of the Court's order, deliver to the Plaintiff checks payable to the aggrieved persons in the amounts approved by the Court. In no event shall the aggregate of all such checks exceed the sum of the Victims'

VERIFIED COMPLAINT AND           13
DEMAND FOR JURY TRIAL

Compensation Fund, including accrued interest and after deducting compensation to the Plaintiff as described above.  No aggrieved persons shall be paid until he or she has executed and delivered to counsel for the Plaintiff a signed and notarized statement releasing the above-named Defendants from all claims related to the Subject Property.

    i.   In the event that less than the total amount in the fund including interest is distributed to aggrieved persons, the remaining funds shall be submitted to an education fund to be drawn upon by the Plaintiff and other non-profit organizations for purposes of educating housing consumers and providers on the requirements of the Fair Housing Act.

    j.   The above-named Defendants shall permit the Plaintiff, upon reasonable notice, to review any records that may facilitate its determinations regarding the claims of allegedly aggrieved persons.

53.  The Court should award to the Plaintiff and against the above-named Defendants punitive damages due to the intentional and willful nature of the above-named Defendants' conduct in the amount of $10,000.00.

54.  The Court should enjoin the above-named Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with the above-named Defendants, from failing or refusing to comply with all requirements of the FHA and its implementing regulations.

55.  The Court should award to the Plaintiff and against the above-named Defendants reasonable attorney's fees and costs incurred in this action, as provided for by statute and court rule.

VERIFIED COMPLAINT AND      14
DEMAND FOR JURY TRIAL

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff Intermountain Fair Housing Council prays that the Court enter judgment against the above-named Defendants as follows:

A.  That the Court find and declare that the actions and omissions of the above-named Defendants constitute violations of the Fair Housing Act;

B.  That the Court award to the Plaintiff and against the above-named Defendants actual damages in compensation for its out-of-pocket expenses and past diversion of resources in the amount of $13,021.11, which continue to accrue;

C.  That the Court award to the Plaintiff and against the above-named Defendants actual damages in compensation for the necessary future diversion of the Plaintiff's resources in the amount of $10,500.00;

D.  That the Court award to the Plaintiff and against the above-named Defendants actual damages in compensation for the Plaintiff's lost economic opportunity in the amount of $1,000.00;

E.  That the Court award to the Plaintiff and against the above-named Defendants actual damages in compensation for the frustration of the Plaintiff's mission in the amount of $19,006.00;

F.  That the Court enter an order establishing a Victims' Compensation Fund in the amount of $945,919.76, as determined by applying the calculation set forth in the attached Appendix B and to be administered according to the terms set forth in Paragraph 52 above;

G.  That the Court award to the Plaintiff and against the above-named Defendants punitive damages due to the reckless or callous nature of the above-named Defendants' conduct in the amount of $10,000.00;

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

15

H.  That the Court enjoin the above-named Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with the above-named Defendants, from failing or refusing to comply with all requirements of the FHA and its implementing regulations;

I.  That the Court award to the Plaintiff and against the above-named Defendants reasonable attorney's fees and costs incurred in this action;

J.  That the Court order any further and additional relief as the interests of justice may require.

<u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury on all issues.

DATED this __3rd__ day of __December_____, 2010.


_____
KEN NAGY
ATTORNEY FOR PLAINTIFF

RICHARD MABBUTT, being first duly sworn on his oath, deposes and says:

I am the Executive Director of the Intermountain Fair Housing Council, the Plaintiff herein, that I have read the foregoing document, know well the contents thereof, and that the facts therein stated are true to the best of my knowledge and belief.

_____/s/_____
RICHARD MABBUTT

STATE OF I D A H O   )
                     : ss
County of _____ )

          I, _____, a Notary Public for said state, does hereby certify that on the _____ day of _____, 2010, personally appeared before me RICHARD MABBUTT, Executive Director of the Intermountain Fair Housing Council, who, being by me first duly sworn, declared that he signed the foregoing document as such, and that the statements therein contained are true and accurate as he verily believes.

        SEAL

_____/s/_____
Notary Public in and for the State of _____
Residing at: _____
My commission expires: _____

VERIFIED COMPLAINT AND         17
DEMAND FOR JURY TRIAL

## APPENDIX A:

## PLAINTIFF'S MEMORANDUM OF DAMAGES

*Intermountain Fair Housing Council v. Chief Seltice Mobile Home Park and Jeanie Peery*

Plaintiff:                Intermountain Fair Housing Council

Attorney for Plaintiff: Ken Nagy
                         Attorney at Law
                         P.O. Box 164
                         Lewiston, Idaho 83501
                         (208) 301-0126
                         Fax:  (509) 758-9820
                         E-mail: knagy@lewiston.com

Defendants:             Chief Seltice Mobile Home Park
                         Jeanie Peery

Date Prepared:          November 29, 2010

---

The Plaintiff has identified four categories of damages that it has suffered as the result of the above-named Defendants' failure to comply with the FHA.  These categories are: (1)  Past Diversion of Resources; (2) Future Diversion of Resources; (3) Lost Economic Opportunity; and (4) Frustration of Mission.  Each of these categories of damages have been recognized and awarded by various courts to organizational plaintiffs in previous fair housing cases.[1]

---

[1] *See, Southern Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138 (Cent. Dist. Cal. 2007) (fair housing organization awarded $6,590.80 for diversion of resources and $29,065.32 for frustration of mission), *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) (fair housing organization awarded $14,217.00 for the diversion of resources); *HUD v. Perland*, Fair Housing-Fair Lending Rptr. ¶25,136 (HUD ALJ 1998) (fair housing organization awarded $4,516 for the diversion of resources and $1,400 for the costs of future monitoring of the defendants); *Ragin v. Harry Macklowe Real Estate Co.*, 801 F.Supp. 1213, *aff'd in pertinent part*, 908 F.3d 898 (2nd Cir. 1993) (fair housing organization awarded $20,000 for the diversion of resources); *HUD v. Jancik*, Fair Housing-Fair Lending Rptr. ¶25,058 (HUD ALJ 1993) (fair housing organization awarded $13,386 for the diversion of past and future resources and $9,000 for the financial opportunity lost as a result of the investigation and litigation of the case); *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992) (fair housing organization awarded $16,500 for out-of-pocket expenses and costs of future monitoring

VERIFIED COMPLAINT AND                18
DEMAND FOR JURY TRIAL

The following represents an itemization of the Plaintiff's damages:

### 1.  Out-of-Pocket Expenses and Past Diversion of Resources

The Plaintiff has incurred significant pre-litigation expenses as a result of the above-named Defendants' discriminatory actions, which are constituted by its out-of-pocket expenses and its past diversion of resources.  The Plaintiff has sponsored training workshops in the above-named Defendants' geographic area, and has engaged in site monitoring, investigation, complaint preparation, counseling and other activities with regards to this matter.  As a result of these activities, it has incurred expenses as follows:

a.  Litigation Costs (to date):              $485.50

b.  Investigation and Counseling Costs:    $4,029.61

c.  Educational efforts:                $5,750.00

d.  Cost of Deferred Actions:         $2,756.00

Total Past Diversion of Resources:   $13,021.11

Further litigation of these matters will result in an increase in the Plaintiff's diversion of resources, as well as other damages.

### 2.  Future Diversion of Resources

The Plaintiff has an affirmative duty to ensure the above-named Defendants' ongoing compliance with the FHA, with regards to both the subject property as well as any future developments in which the above-named Defendants may participate.  Such monitoring activities include site visits, training of the above-named Defendants and their employees and agents, counseling of victims, and testing.

---

and training); *Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D. Va. 1987) (fair housing organization awarded $2,300 for the diversion of resources and $10,000 for the frustration of its equal housing mission).

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

The Plaintiff expects to incur the following expenses as a result of the current violations:

a.  Future Advertising Costs:                          $3,000.00

b.  Cost of future training:                           $4,500.00

c. Costs of Future Monitoring/Testing:                 $3,000.00

                     Total Future Diversion of Resources:    $10,500.00

### 3.  Lost Economic Opportunity

Vigorous investigation and enforcement of fair housing complaints, including the property at issue herein, has caused the Plaintiff to divert limited resources and manpower away from grant-writing activities.  The Plaintiff could reasonably expect to have obtained funding to sponsor fair housing training events in the amount of $1,000.00 if it had not been so diverted due to the above-named Defendants' actions

a.  Loss of Funding:                                   $1,000.00

### 4.  Frustration of Mission

The investigation of the subject of this complaint, the counseling and training provided to the community, and the preparation of the administrative complaint have caused the Plaintiff to divert significant resources toward this proceeding and has undermined the work of furthering fair housing in the state of Idaho.

As a direct result of the above-named Defendants' discriminatory actions, the Plaintiff's mission of furthering fair housing has been significantly frustrated, and the Plaintiff has had to devote, and will continue to devote, additional resources in order to counteract the past and ongoing effects of this discrimination.

Furthermore, the property at issue in this proceeding has constituted a formidable barrier to non-discriminatory housing, thereby undermining the mission of the Plaintiff in guaranteeing

VERIFIED COMPLAINT AND                    20
DEMAND FOR JURY TRIAL

fair housing to all residents of the state.  The Plaintiff has determined that it will be necessary to educate housing consumers regarding fair housing requirements in order to counteract the effects of the above-named Defendants' failure to comply with the FHA.

The Plaintiff measures the damage to its frustration as the total monetary damages that the above-named Defendants' actions have cost to correct, including lost funding opportunities.

a.  Frustration of Mission                                         $19,006.00

## **TOTAL DAMAGES**

The Council calculates its total damages in this proceeding as follows:

1.  Out-of Pocket Expenses and Past Diversion of Resources:     $13,021.11

2.  Future Diversion of Resources:                             $10,500.00

3.  Lost Economic Opportunity:                                  $1,000.00

4.  Frustration of Mission:                                     $19,006.00

                                   Total Damages:     $43,527.11

**APPENDIX B:**

**CALCULATION OF VICTIMS' COMPENSATION FUND**

*Intermountain Fair Housing Council v. Chief Seltice Mobile Home Park and Jeanie Peery*

Plaintiff:                    Intermountain Fair Housing Council

Attorney for Plaintiff: Ken Nagy
                             Attorney at Law
                             P.O. Box 164
                             Lewiston, Idaho 83501
                             (208) 301-0126
                             Fax:  (888) 291-3832
                             E-mail: knagy@lewiston.com

Defendants:               Chief Seltice Mobile Home Park
                             Jeanie Peery

Date Prepared:            November 29, 2010

_____

**I.  INTRODUCTION**

In addition to the damages incurred by the Plaintiff, a number identified and of as-of-yet unidentified victims have also suffered damages as the result of the above-named Defendants' discriminatory actions.  In furtherance of the Plaintiff mission, a Victims' Compensation Fund should be created in order to identify and obtain adequate compensation for such victims.

The Federal District Court for the District of Idaho has frequently ordered the establishment of a Victims' Compensation Fund in previous actions brought pursuant to the Fair Housing Act.  *See, United States of America and Intermountain Fair Housing Council v. Stealth Investment, LLC, et al.*, Case No. CV 07-500-E-EJL (Consent Decree entered May 29, 2008 establishing Victims' Compensation Fund in the amount of $12,500.00); *United States of America v. Taigen & Sons, Inc., et al.*, Case No. CV 01-337-N-EJL (Consent Order entered July 18, 2006 establishing Victims' Compensation Fund in the amount of $55,000.00); *United States*

VERIFIED COMPLAINT AND              22
DEMAND FOR JURY TRIAL

*of America v. Thomas Development Co., et al.*, Case No. CV 02-68-C-EJL (Consent Order entered March 11, 2005 establishing Victims' Compensation Fund in the amount of $100,000.00); *United States of America v. S-Sixteen Ltd. Partnership*, Case No. CV 03-154-S-BLW (Consent Order entered March 14, 2005 establishing Victims' Compensation Fund in the amount of $40,000.00); *United States of America v. Pacific Northwest Electric, Inc., et al.*, Case No. Civil No. 01-19-S-BLW (Consent Decree entered October 21, 2003 establishing Victims' Compensation Fund in the amount of $29,000.00); *United States of America v. Virginia L. Vanderpool, et al.*, Case No. CIV 01-78-S-BLW (Consent Order entered April 27, 2002 establishing Victims' Compensation Fund in the amount of $30,000.00); *United States of America, et al., v. Duane B. Hagadone, et al.*, Case No. CV 97-603-N-RHW (Consent Order entered July 6, 1999 establishing Victims' Compensation Fund in the amount of $30,000.00).

Said orders, however, do not contain a description of how the amount of such a fund was calculated. The Victims' Compensation Fund that should be ordered herein should be calculated according to the underlying principles and using the applicable figures set forth below.

## II. UNDERLYING PRINCIPLES

A. The number of units that exist at the subject property that are required to comply with the requirements of the Fair Housing Act total 28.

B. The total number of months that residents and prospective purchasers have been subjected to discrimination at the subject property in violation of the Fair Housing Act is currently 280 months, as of the filing of this complaint.

C. On average, each of the units could be expected to be rented to a new tenant every twelve months.

VERIFIED COMPLAINT AND               23
DEMAND FOR JURY TRIAL

D.  The U.S. Census Bureau Population Survey of 2000 indicates that, for the state of Idaho, persons (age 5+) with a disability comprised 13.0% of the population.

E.  The amount of damages awarded to victims in similar cases has been $10,000 or more.

F.  The Plaintiff is the organization best equipped and situated to administer the Victims' Compensation Fund.

G.  The Plaintiff should be compensated at its operational rate of $45.88 per hour in the administration of the Victims' Compensation Fund.

H.  The number of hours that it will take to administer the Victims' Compensation Fund and complete compensation of victims can reasonably be expected to be three hours per identified victim.

I.  Administration of the fund will result in the incursion of out-of-pocked expenses, such as advertising and travel costs, in the amount of $1,000.00 per identified victim.

### III.  CALCULATION OF AMOUNT OF VICTIMS' COMPENSATION FUND

The total amount of the Victims' Compensation Fund should be calculated as follows:

1.  <u>Step One: Estimated Compensation for Victims.</u>  The amount of funds that can reasonably be expected to be necessary to compensate victims of discrimination by the above-named Defendants, as they become identified, should be calculated as follows:

<u>First</u>, the total number of months that the above-named Defendants have owned or managed the Subject Property is divided by the estimated average duration of tenancy in months, and multiplied by the total number of units at the subject property.  This represents the total number of tenants or applicants at the subject property over the relevant time period.  This number can be expressed as follows:

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

24

(280/12) **X** 28 = **653.33**                              *(1.1)*

<u>Second</u>, the above product is multiplied by 13.0% to determine the number who faced discrimination based on disability:

(653.33 **X** 0.130) = **84.93**                              *(1.2)*

<u>Third</u>, the sum from equation (1.2) above is multiplied by a reasonable damage award to each Victim (which is $10,000), arriving at the total necessary to compensate Victims:

84.93 **X** $10,000 = **$849,300.00**                              *(1.3)*


2.  <u>Step Two: Estimated Compensation for the Fund Administrator.</u>  The amount of funds that can reasonably be expected to be necessary to compensate the fund administrator for work performed in administering the Victim's Compensation Fund should be calculated as follows:

The estimated total number of Victims (from equation 1.2, above) is multiplied by the number of hours necessary to administer the fund per identified Victim (which is 3), times the Plaintiff/Intervener's operational rate (which is $45.88 per hour):

84.93 **X** 3 **X** $45.88 = **$11,689.76**                              *(2.1)*


3.  <u>Step Three</u>.  The amount of funds that can reasonably be expected to be necessarily incurred by the fund administrator as out-of-pocket expenses in administering the Victims' Compensation Fund should be calculated as follows:

The estimated total number of Victims (from equation 1.2, above) is multiplied by the amount that the Plaintiff/Intervener can be expected to incur in out-of-pocket costs in identifying and compensating each identified Victim (which is $1,000):

84.93 **X** $1,000 = **$84,930.00**                              *(3.1)*

VERIFIED COMPLAINT AND                    25
DEMAND FOR JURY TRIAL

4.  <u>Step Four</u>.  The total amount of the Victims' Compensation Fund is the amount

determined by adding the results of Step One, Step Two and Step Three, as set forth above:

**TOTAL = $849,300.00 + $11,689.76 + $84,930.00 = $945,919.76**          *(4.1)*

VERIFIED COMPLAINT AND                  26
DEMAND FOR JURY TRIAL

## North Idaho MEDICAL Care Center

**NORTH IDAHO MEDICAL CARE CENTER**

| ❏ 1701 Lincoln Way | ❏ 750 Syringa Ste. 100 | ❏ 566 W. Prairie Avenue | ❏ 16760 N. Hwy 41 | ❏ 30544 Hwy 200 Ste 101 |
|---|---|---|---|---|
| Coeur d' Alene, ID 83814 | 777-9110 | Coeur d'Alene, ID 83815 | Rathdrum, ID 83858 | Ponderay, ID 83852 |
| 667-9110 | ❏ 925 E. Polston Avenue | 772-9110 | 687-9110 | 263-9110 |
| Family Care 765-1866 | Post Falls, ID 83854 | Family Care 772-8263 | Family Care 687-9113 | Family Care 263-6300 |
| | Family Care 773-9113 | | | |

| Patient | | Phone Number | Age | Sex |
|---|---|---|---|---|
| Address | | Date 07 / 16 / 07 | | |

R This patient suffers from depression & Needs the companionship of her Dog

❏ Kimberly Beine, M.D.
❏ Joan Bloom, M.D.
❏ John Casper, M.D.
❏ Dana Colbert, D.O.
❏ William Gray, M.D.
❏ Michael Harris, M.D.
❏ Paul Haynes, M.D.
❏ Kirk Hjeltness, M.D.
❏ M. James Johnson, M.D.
❏ Blair Lindblad, M.D.
❏ D. Sean Linford, M.D.
❏ Thomas Martin, M.D.
❏ Peter Obligato, M.D.
❏ Jack T. Riggs, M.D.
❏ Chad Scarola, M.D.
❏ Maria Stamp, M.D.
❏ Catherine Suriano, M.D.
❏ D. Cooper Wester, M.D.
❏ Ron Wick, M.D.
❏ James P. Winter, M.D.
❏ M. Daniel Yovichin, M.D.

❏ Generic
❏ Brand Only
❏ Refills  1  2
❏ No Refills

Prescriber:

DEA #

**Dr. Blair Lindblad**
**DEA DL5525019**

EXHIBIT "A"

# NUNLEY LAW, PLLC

## Shawn C. Nunley, *Attorney*

April 9, 2009



Re: 90 Day Notice of Termination

Dear ▮▮▮▮

My firm has been retained to represent Jeanie Peery regarding the above-referenced property.  Ms. Peery is exercising her right under Paragraph 8 of your Rental Agreement and Idaho Code Section 55-2010(2) to terminate your lease.  You have ninety (90) days from the receipt of this letter to vacate the premises.

You are required to remove all personal property items, including but not limited to your trailer.  Should you fail to timely vacate and/or remove the aforementioned property, my client has directed me to take all available legal action which would include a claim and recovery of attorney's fees in prosecuting your eviction.

Please feel free to have your attorney contact me should you have any questions regarding this matter.

Sincerely,

NUNLEY LAW, PLLC

Shawn C. Nunley

Cc: client

**EXHIBIT "B"**

*Office:* 208.664.1232 • *Fax:* 208.664

## **SAMPLE LETTER #3**
## **REQUESTING A REASONABLE ACCOMMODATION**

Dear _Jeanie Peery_____ [name of housing provider]:

As a person with a disability, I am hereby requesting a reasonable
accommodation for ████████████████████████████████
[address of housing for which you wish to be accommodated] pursuant to
the Fair Housing Act, 42 U.S.C. §3604, which requires housing providers to
make "reasonable accommodations in rules, policies, practices, or services,
when such accommodations may be necessary to afford such person equal
opportunity to use and enjoy a dwelling."

The accommodation I am requesting is _To remain a_
_Tennant in This mobile Home Park._
_____
_____
_____ [describe accommodation requested].

I need this accommodation because _I Have a disability_
_which Requires me To Keep my dog_
_as a companion._
_____
_____ [briefly explain why you need the accommodation].

Please respond to this reasonable accommodation request in writing at your
earliest convenience. _(5-7 working days)_

Sincerely,

████████████████████  [your signature]
_2/15/08_  [date]
████████████████████  [your name]
████████████████████  [your address] _83854_
_____  [your telephone number]

**EXHIBIT** "C"

Letter3, updated 9/07

## PROOF OF NEED FOR A REASONABLE ACCOMMODATION

Dear _____ [name of housing provider]:

I am currently treating _____ [name of tenant] in the capacity of
**Family Doctor** [your professional position]. Mr./Ms. _____
[last name of tenant] has contacted me regarding his/her need for a reasonable accommodation. Mr./Ms.
_____ [last name of tenant] makes this request pursuant to the Fair Housing Act, 42
U.S.C. §3604, which requires housing providers to make "reasonable accommodations in rules, policies,
practices, or services, when such accommodations may be necessary to afford such person equal
opportunity to use and enjoy a dwelling." I have been informed that the accommodation he/she has
requested is _____
**needs dog as companionship** [describe accommodation requested].

I am aware of the nature and extent of Mr./Ms. _____'s [last name of tenant] disability and I
understand the reason/s for his/her request for a reasonable accommodation. I do hereby verify that, in my
professional judgment, Mr./Ms. _____ [last name of patient] meets the definition of "handicapped"
under the Fair Housing Act [see definition below to make this determination] and that such a reasonable
accommodation may be necessary to afford Mr./Ms. _____ [last name of tenant] the equal opportunity
to use and enjoy the dwelling unit in which he/she resides, as provided by the Fair Housing Act.

Sincerely,

_____ [your signature]     **4-15-9** _____ [date]
_____ [your name]
_____ [your address]
_____ [your telephone number]

**Blair Lindblad M.D.**
**Senior Care Clinic**

*(vertical left margin:)* **Kootenai Family Care  925 E. Polston Avenue  Post Falls, ID 83854**

### "HANDICAP" IS DEFINED BY FEDERAL REGULATIONS (24 CFR §100.201) AS FOLLOWS:
(for reference by care provider in determining whether tenant meets definition of "handicap")

"Handicap" means, with respect to a person, a physical or mental impairment which substantially limits one or more
major life activities; a record of such an impairment; or being regarded as having such an impairment. This term does
not include current, illegal use of or addiction to a controlled substance. For purposes of this part, an individual shall
not be considered to have a handicap solely because that individual is a transvestite. As used in this definition:
(a) "Physical of mental impairment" includes:
  (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of
      the following body systems: Neurological; musculoskeletal; special sense organs; respiratory, including
      speech organs; cardiovascular; reproductive; digestive; genito-urinary; hemic and lymphatic; skin; and
      endocrine; or
  (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or
      mental illness, and specific learning disabilities. The term "physical or mental impairment" includes, but is
      not limited to, such diseases and conditions as orthopedic, visual, speech and hearing impairments, cerebral
      palsy, autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, Human
      Immunodeficiency Virus infection, mental retardation, emotional illness, drug addiction (other than addiction
      caused by current, illegal use of a controlled substance) and alcoholism.
(b) "Major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing,
    hearing, speaking, breathing, learning and working.
(c) "Has a record of such an impairment" means has a history of, or has been misclassified as having, a mental or
    physical impairment that substantially limits one or more major life activities.
(d) "Is regarded as having an impairment" means:
  (1) Has a physical or mental impairment that does not substantially limit one or more major life activities but that
      is treated by another person as constituting such a limitation;
  (2) Has a physical or mental impairment that substantially limits one or more major life activities only as a result
      of the attitudes of other toward such impairment; or
  (3) Has none of the impairments defined in paragraph (a) of this definition but is treated by another person as
      having such an impairment.

Letter4, updated 9/07

# NUNLEY LAW, PLLC

## Shawn C. Nunley, *Attorney*

April 24, 2009



Dear ███

    As you are aware, my firm represents Jeanie Peery regarding the above-referenced property. Pursuant to Idaho Code section 55-2011 and the Rental Agreement, you were notified that you had ninety (90) days to vacate the above-referenced premises. I have received a Request for Reasonable Accommodation, and my client responds as follows.

    Your request appears premised upon your need to have a pet, implying that my client's decision to terminate your lease was a result of your wrongful possession of a pet at your rental. However, my client's decision to terminate your lease <u>was not based upon your pet</u> ownership, but rather, as it was plainly stated, was based upon her decision to exercise her rights under the Rental Agreement and Idaho law to evict you. You are again directed to vacate your premises as previously stated.

    Should you fail in this regard, my client has directed me to take all available legal action which would include a claim and recovery of attorney's fees in prosecuting your eviction.

    Please feel free to have your attorney contact me should you have any questions regarding this matter.

Sincerely,

NUNLEY LAW, PLLC

*(sent without signature to avoid delay)*

Shawn C. Nunley

**EXHIBIT "D"**

## SAMPLE LETTER #3
## REQUESTING A REASONABLE ACCOMMODATION

Dear *Ms. J. Perry / Chief Jettie NHP* [name of housing provider]:

As a person with a disability, I am hereby requesting a reasonable accommodation for ███████████████████
[address of housing for which you wish to be accommodated] pursuant to the Fair Housing Act, 42 U.S.C. §3604, which requires housing providers to make "reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

The accommodation I am requesting is *Your rescind your notice to vacate the rental space above, since vacating imposes an undue hardship because of my disability and because your attorney's letter of 4/24/09 states that you're using the rental agreement & Idaho law "to evict me". I believe this action unwarranted and not in* [describe accommodation requested]. *Compliance with Idaho Code.*

I need this accommodation because *The removal of my mobile home even in 60 days is nearly impossible given my disability, and the loss of my mobile home – if abandoned because of the "eviction" as stated by your attorney would create economic harm and damage affecting further my disability .* [briefly explain why you need the accommodation].

*Providers letter = proof of disability*

Please respond to this reasonable accommodation request in writing at your earliest convenience. *(5-7 working days)*

Sincerely,

~~*Berlund Maldnen for*~~ _____ [your signature]

███████████████████ [date]

_____ *5/4/09* _____ [your name]
_____ [your address]
_____ [your telephone number]

Letter3, updated 9/07

███████████████  EXHIBIT
███████████████  "E"

6/2/09

# NUNLEY LAW, PLLC

**Shawn C. Nunley**, *Attorney*

May 28, 2009



Dear

     I represent your landlord, Jeanie Peery.  I am responding to your letter dated May 7, 2009, which was received by me on May 18, 2009.  Your request for the accommodation is <u>denied</u> for the following reasons.

     You stated in your letter that your "disability" and the ostensible "undue hardships" associated with the ordered vacation of your premises warrants reconsideration of your eviction.   You also state that your belief that the eviction is in discord with Idaho Law.  Your above-mentioned positions do not support revocation of eviction because: (1) You are not being evicted for any reasons associated with your eviction; and (2) your Rental Agreement <u>and</u> Idaho Law bestows upon my client the right to evict upon 90 days written notice.

     You do not own the property upon which your trailer sits.  My client owns said property, and as a corollary possesses numerous property rights including the inherent right of alienation.  My client is <u>not</u> evicting you as a result of your disability, but rather pursuant to the express and unambiguous terms of your Rental Agreement.  Specifically, that agreement allows a "no cause" eviction upon execution of a ninety (90) day written notice.  This provision is supported by the Idaho Code 55-2010 (3), which expressly grants the same right to an owner of a mobile home park.

     I personally spoke with a representative of Idaho's Fair Housing Authority, and emphasized that you are <u>not</u> being evicted because of your pet, or for, <u>any</u> other reason than my clients' right to control and exercise her property rights.  The representative cited Idaho Code Section 50-2011 in support of your proposition that your rental agreement shall renew in perpetuity save for instances where Idaho Code Section 55-2010's provisions apply.  That argument fails, however, given that the ninety (90) day right of eviction <u>is</u> found within that Section.

# EXHIBIT "F"

Again, you are hereby ordered to remove you and your personal property- which includes your trailer- from the premises by Friday, July 17th, 2009. The return certification from the post office shows you received your original eviction notice on Friday, April 10th, 2009.


Yours Truly,

NUNLEY LAW, PLLC


Shawn C. Nunley


SCN/een
Encl.